142 So. 427

## FROST v. STATE.
### 6 Div. 52.

Supreme Court of Alabama.
April 28, 1932.

Rehearing Denied June 16, 1932.

Norman Gunn, of Jasper, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., and Pennington & Tweedy, of Jasper, for the State.

234

KNIGHT, J.

The appellant was indicted, tried, and convicted of murder in the first degree for killing Sam Waldrop, and his punishment was fixed by the jury at death.

The indictment was returned against the defendant at the spring term, 1931, of the circuit court of Walker county. The evidence tended to show that the defendant shot and killed the deceased on or about the 10th day of February, 1931, and, after he had killed him, removed from his body, and carried away, certain articles of his clothing, including his shoes and watch. The overcoat, worn by the deceased at the time he was killed, was buried by the defendant near the scene of the killing. The defendant was wearing the shoes of deceased at the time he was arrested. It also appears that the de-fendant, after removing the coat and breeches from the body of deceased, carried these articles to a nearby shop, and had the same cleaned and pressed. The evidence also tended to show that the defendant gave the watch of deceased to a woman friend shortly after the alleged murder. When found, the body of deceased was buried, about ten inches deep in a "muck" dump, along a certain road near Corona, in Walker county. Defendant at first denied all knowledge of the killing, but later, after he was arrested, made a confession, admitting the killing, but claiming he was drunk when he committed the crime. He claimed on the trial that he was intoxicated to such an extent that he could not, and did not, remember burying the body of the deceased, or that he had removed and carried away any of the clothing worn by deceased at the time of his death.

We will refer to other facts in evidence in the case, in discussing some of the exceptions reserved by defendant on the trial.

The record proper discloses that the arraignment, the drawing of a special venire for the trial, and the order setting a day for the trial of the defendant, and the order for service of the venire and of a copy of the indictment upon him by the sheriff, were and are in all respects regular. The record proper also shows the presence of the defendant, attended by his attorney, in open court at the time the above orders of the court were made. The judgment entry shows that the arraignment was had on the 3d day of March, 1931, and the cause was then set for trial on March 16, 1931. On March 16, 1931, the day set for trial of the defendant, the minute entry recites: "March 16, 1931. The jury having been selected and empanelled and sworn according to law, to try the case and the indictment against defendant having been read and stated to the jury, the defendant pleads thereto not guilty, and with permission of the court pleads further 'not guilty by reason of insanity.' Upon this plea issue is joined by the State through its solicitor." On March 17, 1931, the following minute entry appears in the case: "March 17, 1931, Thereupon came a jury of good and lawful men, to-wit, Thos. J. Payne, and eleven others who having been duly sworn, empanelled and charged according to law on their oaths do say, 'We the jury find the defendant guilty of murder in the first degree as charged in the indictment and fix his punishment at death. Thos. J. Payne, Foreman.'" On March 23, 1931, the following other minute entry appears: "March 23rd, 1931. Accordingly it is considered by the court, and it is the order and judgment of the court that the defendant is guilty of murder in the first degree, as charged in the indictment, and his punishment is fixed at death." Immediately following the above there appears the following sentence of the court: "And now on the same

date, viz: the 23rd day of March, 1931, the defendant Vertus Frost, being in open court, and being asked by the court if he has anything to say why sentence of the law should not now be pronounced upon him, says nothing. It is, therefore, the order and judgment of the court, and it is the judgment and sentence of the law, that on Friday, May 22nd, 1931, inside the walls of Kilby Prison, at Montgomery, in this State, and by the means and agencies provided by law in such cases, the defendant, Vertus Frost, be put to death by electrocution."

█ While the question is not raised in brief of counsel for the defendant, yet we deem it our duty to consider and pass upon the sufficiency of the foregoing minute entries to show the *personal presence* of the defendant, when each of the successive steps were taken, and orders made, in his case. Does the record show the presence of the defendant in open court when the jury was selected on March 16, 1931, to try his case? If so, does it affirmatively show his presence in open court, when the verdict was returned by the jury? At the time the court adjudged the guilt of this defendant on March 23, 1931, does this record affirmatively show the presence of the defendant in open court? It is our duty to consider all questions apparent on the record or reserved by bill of exceptions, though not assigned, and if error appears, prejudicial to the defendant, it is our duty to reverse the case.

In the case of Wells v. State, 147 Ala. 140, 41 So. 630, 631 (which was an indictment for misdemeanor) this court held: "In all criminal cases the verdict of the jury must be rendered in open court and in the presence of the accused. In cases of felony the prisoner must be personally present when the jury return their verdict, and to support a conviction the record must *affirmatively* declare his presence."

In Cook v. State, 60 Ala. 39, 31 Am. Rep. 31, this court held: "The offense with which defendant was charged by the indictment in this cause is a felony according to section 4095 (3541) of the Code of 1876, because punishable by imprisonment in the penitentiary. In such a case the defendant is entitled, as a right, to be present at the rendering of the verdict; and if rendered against him during his absence it is void." And, in the same case, it is held that it is not within the authority of the prisoner's counsel to waive for him his right to be present when the verdict was delivered. Waller v. State, 40 Ala. 325; Young v. State, 39 Ala. 357; Sperry v. Commonwealth, 9 Leigh (36 Va.) 623, 33 Am. Dec. 261.

In the case of Eliza (a freed woman) v. State, 39 Ala. 693, it was said: "In looking into the record in this case, we find a fatal error, which must reverse the judgment be-

low. In the judgment-entry, it does not sufficiently appear that the prisoner was personally present in court, when she was tried and sentenced. The entry recites that 'this day came S. A. M. Wood, solicitor, and the defendant,' etc.; and it also recites, 'that she be taken hence to the jail of Tuskaloosa county,' etc. These recitals are not sufficient to make it affirmatively appear that the prisoner was present *in person*, both during the trial, and at the time of the sentence. The rule is well settled, in England, and in this state, and is inflexible, that a prisoner, accused of felony, must be arraigned in person, and must plead in person; and in all the subsequent proceedings, it is required that he shall appear in person. 2 Leading Crim. Cases, and authorities there cited." Young v. State, 39 Ala. 357. In Young v. State, supra, Justice Stone said: "Two well-defined principles of law render it necessary that the judgment pronounced by the circuit court in this case be reversed: first, that judgment cannot be given against any man, in his absence, for a corporal punishment; and, second, that the record must *affirmatively show the prisoner's presence.*" (Italics supplied.) Continuing, this great judge in that case said: "Possibly, it is enough if the record show by *fair inference* that the prisoner was present when the sentence was pronounced." State v. Craton, 6 Ired. (28 N. C.) 164; Sperry v. Commonwealth, 9 Leigh (36 Va.) 623, 33 Am. Dec. 261; 2 Leading Criminal Cases 449, and note.

In 16 Corpus Juris § 2066, page 813, the above principle is thus broadly stated: "By express constitutional or statutory provisions in many states, and at common law in the absence of a statute, it is essential to a valid trial and conviction on a charge of a felony that the defendant shall be personally present, not only when he is arraigned, but at every subsequent stage of the trial, unless he may and does waive his right." Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 59 L. Ed. 969; Lewis v. U. S., 146 U. S. 370, 13 S. Ct. 136, 36 L. Ed. 1011; Cook v. State, 60 Ala. 39, 31 Am. Rep. 31 (and other cases above cited); Davidson v. State, 108 Ark. 191, 158 S. W. 1103, Ann. Cas. 1915B, 436; Bearden v. State, 44 Ark. 331; People v. Kohler, 5 Cal. 72; State v. Hurlbut, 1 Root (Conn.) 90; Fails v. State, 60 Fla. 8, 52 So. 612, Ann. Cas. 1912B, 1146; Nolan v. State, 55 Ga. 521, 21 Am. Rep. 281; Miller v. State, 13 Ga. App. 440, 79 S. E. 232; People v. Turney, 273 Ill. 546, 113 N. E. 105; Southerland v. State, 176 Ind. 493, 96 N. E. 583; State v. Moran, 46 Kan. 318, 26 P. 754; Allen v. Com., 86 Ky. 642, 6 S. W. 645; State v. Thomas, 128 La. 813, 55 So. 415; Rolls v. State, 52 Miss. 391; People v. Sprague, 217 N. Y. 373, 111 N. E. 1077; State v. Dry, 152 N. C. 813, 67 S. E. 1000; Vowell v. State, 132 Tenn. 349, 178 S. W. 768; Brown v. State, 38 Tex. 482; Dougherty v. Com., 69 Pa. 286.

In 16 Corpus Juris, at page 814, it is further stated, however, that "as a general rule the presence of the defendant during a trial for felony must appear from the record, and generally such presence cannot be presumed, but if the record shows defendant's presence at the commencement, or at any other stage of the trial, his presence during subsequent stages thereof will be presumed, in the absence of evidence to the contrary."

The record proper in the case, now under consideration, shows affirmatively the personal presence, in open court, of the defendant and his attorney, when the defendant was arraigned upon the indictment and pleaded thereto, when the day was set for his trial, viz., March 16, 1931, when the venire was drawn and allowed for his trial, and when all other orders preliminary to his trial were made. It also affirmatively shows that the defendant was present in person when the sentence of death was pronounced upon him. Counsel for defendant has made no claim here that the defendant was not present in open court from the commencement to the conclusion of the trial. A bill of exceptions appears in this case, and this bill of exceptions, if we are permitted to look to it, shows the presence of defendant during trial, as many exceptions appear therein to have been reserved by the defendant on the trial.

■ From the fact that the defendant is shown to have been personally present, attended by counsel, at his arraignment upon the indictment, and from the further fact that the record proper affirmatively shows the personal presence of the defendant when sentence upon him was pronounced by the court, may we not draw a fair inference that he was also personally present at the other successive stages of his trial, and at the time the verdict was returned into court? We are of the opinion, and so conclude, that such facts amply warrant the inference that the defendant was present at each successive stage of his trial. In so holding, we are supported directly by the decision in the case of Dix v. State, 147 Ala. 70, 41 So. 924, 926. In the Dix Case, Judge Denson, who, prior to his election to this court, was a trial judge for many years, says: "The recitals of the minute entry of his personal presence at the arraignment on the 11th, and that the trial was continued from day to day and from time to time, and of his personal presence when sentence was pronounced, and that he said nothing why sentence should not be pronounced, are sufficient to warrant the conclusion that the record by necessary and reasonable implication shows the personal presence of the prisoner during the entire sitting of the court from the arraignment to the rendition of the verdict. * * * Young's Case, 39 Ala. 357; Snow's Case, 58 Ala. 372; Banks & Wood v. State, 72 Ala. 522; Lovett's Case, 29 Fla. 357, 11 So. 172; Irvin's Case,

19 Fla. 872; Palmquist's Case, 30 Fla. 73, 11 So. 521; Stephens' Case, 19 N. Y. 549; West's Case, 22 N. J. Law, 212; Dodge's Case, 4 Neb. 220; Peters' Case, 94 F. 127, 36 C. C. A. 105; Jeffries' Case, 12 Allen (Mass.) 145; Rhodes' Case, 23 Ind. 24; Schirmer's Case, 33 Ill. 276; State v. Langford, 44 N. C. 436; State v. Wood, 17 Iowa, 18."

In the more recent case of Cosby v. State, 202 Ala. 419, 80 So. 803, it is said: "It is suggested that the evidence failed to show the presence of the defendant in court at the several stages of the proceedings now witnessed by the full judgment entry. The docket entries, or the judge's bench notes, as they are commonly called, showed affirmatively the presence of the defendant at the arraignment. They also show by necessary inference that defendant was present at the trial, and the judgment nunc pro tunc and sentence recites his presence in court when that judgment and sentence was pronounced by the court. Repeated recitals of the fact of defendant's presence in court are not necessary. The record and quasi record evidence stated above afforded sufficient basis for the judgment and sentence nunc pro tunc. Dix v. State, 147 Ala. 70, 41 So. 924."

We therefore hold that the record in this case sufficiently shows the presence of the defendant in court during all the stages of his trial. We have pursued the subject at length in view of some divergence of opinion as to when a judgment and sentence in a criminal case sufficiently show the presence of the defendant in court during the progress of the trial. The importance of the inquiry, we trust, justifies the length of the discussion.

■ The appellant asserts that there was error on the part of the court in overruling his motion to quash the venire, because the venire as drawn for his trial contained the name of Bob Hall, and one Bob Hale was served with the jury summons, instead of Bob Hall; and that the "venire that the court ordered served upon the defendant does not contain the number of jurors that the order of the court required, and further that because on the order of the court was a venire of one hundred jurors to be drawn and served on the defendant, whereas there is only ninety-nine, because on the venire that was served on defendant the name of Bob Hall was served from Beat 15, as a miner, and from Sipsey, the postoffice, whereas as a matter of fact there was no such person as Bob Hall who lived in that beat, and the name Bob Hale, or the juror Bob Hale was presented or included in the venire served on the defendant." The court stated to defendant's counsel that the name would be retained or stricken at the election of defendant. The defendant declined to elect, and the court excused the said juror. The defendant excepted to the ruling of the court in excusing the

juror, and in overruling the motion to quash the venire. No request or motion was made that the case be postponed until Bob Hall could be served and brought into court to serve as a juror in the case. This question has been heretofore decided adversely to appellant's contention. We adhere to that ruling. Evans v. State, 209 Ala. 566, 96 So. 923; Jackson v. State, 22 Ala. App. 133, 114 So. 68..

Nor was there any error in the court's refusal to permit the defendant to challenge for cause the juror Jess Wilson. This juror was a brother of the solicitor, and on this ground the defendant sought to challenge him for cause. Code, § 8610; Turner v. State, 15 Ala. App. 19, 72 So. 574.

The questions propounded to witnesses by the state, seeking to identify clothes worn by deceased at the time of his death, were unobjectionable, especially in view of the fact that they were subsequently traced to the possession of the defendant.

The witness Robert Rowland, examined by the state, had testified to seeing the defendant about 8:00 a. m. on Tuesday morning, the day that the deceased disappeared, and the solicitor asked this witness: "I will ask you if he (referring to defendant) said he was looking for Sam Waldrop?" The court permitted this question to be asked and answered, over the objection and exception of the defendant. There was manifestly no good ground of objection to this question. It was also permissible for the state to show by this witness that he saw the defendant with a shotgun. The defendant, as a witness in his own behalf, testified that he killed Waldrop with a shotgun.

The appellant groups in his brief a number of questions to which he objected in detail, and these questions are designated by letters running from the letter "a" to "z," and then by "aa," "bb," "cc," and "dd." We have carefully considered each question, and find no error in the ruling of the court as to any of the questions. They each called for competent, material, and relevant testimony.

It is next insisted that the court committed error in allowing the state to introduce in evidence the coat, trousers, overcoat, shirt, socks, shotgun, hoe, and watch, all of which had been properly identified by one or more witnesses. Shortly after the body of the deceased was discovered buried, the trousers and watch worn by the deceased on the day of his death were found in the possession of defendant, or traced to his possession within a few hours after the alleged murder, and the evidence was admissible in connecting defendant with the crime. The overcoat found buried near the body of deceased was identified by witnesses and was admissible for identification purposes, if for no other purpose. There was no error committed by the court in permitting the state, over the objection of the defendant, to introduce in evidence the shotgun used by defendant in killing the deceased. It was properly identified, and the same thing applies to the hoe.

After the court had permitted the state to offer in evidence the coat, trousers, overcoat, shirt, socks, shotgun, hoe, and watch, and after the state had rested its case, the court stated to counsel: "I want to consider further the question raised on the tender in evidence of the clothing." One of the attorneys for the state thereupon stated to the court, "We will withdraw them." Thereupon defendant moved for a "mistrial and a continuance" on the ground that the court permitted the clothing and the gun, and other articles that were enumerated, introduced in evidence and retained in evidence until the conclusion of all the testimony in the case, and for the further reason that the articles in remaining before the jury had produced an ineradicable impression upon the mind of the jury. The court overruled the motion.

The court stated to the jury: "Gentlemen, there is excluded from the evidence in this case the articles of clothing and the gun and the hoe. Formerly they were offered in evidence, and the court 'excluded' the objections and let them go in, but that ruling is changed and they go out, and I will ask the sheriff to remove them." We cannot affirm error in this ruling of the court. If anything, it was more favorable to defendant than, under the tendencies of the evidence, he was entitled. Some of the evidence was, beyond doubt, admissible. Malachi v. State, 89 Ala. 134, 8 So. 104; White v. State, 72 Ala. 195. The defendant objected to this evidence as a whole. Braham v. State, 143 Ala. 28, 38 So. 919. The court, not only excluded the evidence objected to, but in the outset of its oral charge polled the jury, saying to them: "I want to be sure that the mind of each man on the jury can consider this case strictly according to the evidence and leave out any evidence that was erroneously admitted, and then excluded by the court, and that you can decide it according to the law given you by the court, leaving out any law that may have been read to you by counsel; and I want to ascertain if that's the frame of mind of the jury." Each juror replied in the affirmative. We feel sure defendant's rights were properly safeguarded by the court in this particular.

The defendant complains that the bloody clothing was allowed to remain during the trial in view of the jurors, but the record shows that the trousers, coat, and overcoat had no blood on them; that there was a little sign of blood on the vest. The evidence shows, however, that it was the appellant's counsel who called for the clothes which had blood

on them, and they were brought into court at his request.

It is also insisted that reversible error was committed by the court in overruling defendant's objection to allowing one of the prosecuting attorneys to read a portion of a reported case of this court to the jury. Just what portions of this case, Scales v. State, 96 Ala. 69, 11 So. 123, was read to the jury, we are not advised, but the court stopped the reading of the case by the attorney and then instructed the jury to "let that pass out of your minds," telling the jury at the same time that the court would instruct them as to the law, and "that they will take that as it comes to you from the court." In the ruling of the court in this regard, there was no error. Robinson v. State, 155 Ala. 67, 45 So. 916; Davis v. State, 213 Ala. 541, 105 So. 677.

There was no error in refusing to exclude the following portion of the argument of one of the prosecuting attorneys: "When they read their verdict another crime will never happen in this county." Before ruling on this objection, the argument was corrected to show that the words, "when they," referred to the public. Nor was there error in refusing to exclude the following portion of the solicitor's argument: "We need a revival of law enforcement in Walker County, and now is the time to start it." Lide v. State, 133 Ala. 43, 31 So. 953; Davidson v. State, 211 Ala. 471, 100 So. 641; Olden v. State, 176 Ala. 6, 58 So. 307; Cross v. State, 68 Ala. 476.

The defendant also maintains that the court committed error to a reversal in giving, at the request of the state, written charge 4, which is: "4. If you believe from all the evidence in this case beyond a reasonable doubt that this defendant is guilty, although you may believe that it is possible that he is not guilty, you must convict him." This charge has received the approval of this court, and there was no error in giving it at the request of the state. Prater v. State, 107 Ala. 26, 18 So. 238; Jackson v. State, 136 Ala. 22, 34 So. 188; Dickey v. State, 15 Ala. App. 135, 72 So. 608.

Charge 4, requested by defendant, was properly refused.

In the case of Malachi v. State, 89 Ala. 134, 8 So. 104, 106, it is held by this court: "When a *larceny, robbery,* * * * *arson, or even a murder with robbery,* has been committed; and soon afterwards goods which were stolen at the time the crime was committed are found in the possession of one not having the rightful custody, there is a presumption, more or less strong, * * * that the custodian committed the crime, of which the acquisition of the goods was a presumed concomitant." The defendant was not entitled to have the jury instructed in the terms of its said refused charge 4.

We have carefully examined all questions presented by this record, with reference to the admission of evidence, charges given at instance of state, and charges refused to defendant, whether argued by counsel for appellant or not, and discover no reversible error.

We have also carefully considered appellant's motion for a new trial. The record shows that the trial court carefully safeguarded every legal right of the defendant, that he had the benefit of able counsel, and we are of the opinion the motion for a new trial was properly overruled.

Finding no error in the record, prejudicial to the defendant, the judgment of the lower court will be, and is, here affirmed. And it appearing to the court that the day set for the execution of the death sentence pronounced upon the defendant has passed, it is ordered by the court that Friday, the 8th day of July, 1932, be, and the same is hereby, fixed for the execution of the sentence of death heretofore imposed upon the defendant.

Affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and FOSTER, JJ., concur.

BROWN, J., dissents.